## CHAUNCEY A. SNOW, RESPONDENT, *v.* CHAUNCEY WILLIAMS AND GEORGE WILLIAMS, APPELLANTS.

*Nuisance — action to restrain — when a party is not estopped by acquiescence or laches from maintaining it.*

The plaintiff was the owner of a farm, through which ran a stream, upon which, adjoining plaintiff's farm and situated above it on the stream, defendants had a cheese factory. Defendants discharged into the stream refuse washings and whey, so as to render the water unwholesome, offensive, and unfit for the uses of plaintiff's farm. Upon the trial of an action brought to restrain such use of the factory, it appeared that plaintiff knew, when the factory was built, that it was customary for factories in that part of the country to discharge the surplus whey into streams, and that he made no objection when the subject of such discharge was spoken of.

*Held,* that he was not thereby estopped from maintaining his action.

The factory was put in operation in the spring of 1874, during which season, and that of 1875, plaintiff patronized it, and made no objection to the whey being discharged into the stream. In December, 1875, defendants bought the factory, and operated it in 1876 substantially as before. This action was brought in the spring of 1877.

*Held,* that as the plaintiff had not induced the purchase by any act or representation, he was not estopped from maintaining this action against the defendants.

APPEAL from a judgment in favor of the plaintiff, entered on the report of a referee.

Action to restrain an alleged private nuisance, by perpetual injunction, and to recover damages occasioned thereby. The plaintiff is, and for thirty years has been, the owner and occupant of a farm of about two hundred and fifty acres of land in the county of Cattaraugus, through which runs a natural stream known as Elm creek. The defendants own and operate a cheese factory, which was erected in the spring of 1874, upon a tract of land of about twenty-one acres, adjoining the plaintiffs' land, and situated above it on the same stream. In operating their factory the defendants have been in the habit of discharging the refuse washings and surplus whey into the stream near the factory, thereby, as the referee found, corrupting the water of the stream and rendering it unwholesome, impure and offensive, and often unfit for use for the purposes of the plaintiff's farm, and to some extent corrupting the air along and near the stream, at certain

points on plaintiff's premises, to the discomfort, annoyance and damage of the plaintiff. The referee found that the plaintiff was entitled to an injunction restraining the defendants from discharging into said stream the whey or other refuse matter from said factory, which will tend to render impure or unwholesome the water of the stream, or the atmosphere along the stream. He also fixed the plaintiff's damages at twenty dollars, and decided that neither party should have costs against the other, except that the defendants should pay the fees of the referee. The judgment entered on the report perpetually restrains the defendants from discharging any of the whey or refuse matter of the factory into the stream, and also from doing, suffering or permitting any act or thing at or about said factory which will tend to render the water of said stream or the atmosphere along the same impure or unwholesome. The judgment followed the report, in respect to damages and costs.

*Goodwill & Stevens*, for the appellants. During the years 1874 and 1875 plaintiff not only acquiesced in the discharge of surplus whey into the stream, but also actively assisted therein. He thereby held out to the world that the manner in which the factory was managed was in all respects lawful and proper, and with his full and perfect assent. In December, 1875, when defendants purchased the factory, they had a right to rely upon the appearances which he not only allowed to be held out, but assisted in holding out to the world. This brings the case within the purview of the equitable doctrine of *laches* and acquiescence, elaborated by the cases hereinafter cited. (*Williams* v. *Earl of Jersey*, 1 Cr. & Ph. Ch., 97; *Wood* v. *Sutcliffe*, 8 Eng. L. & Eq., 217; *Bankhardt* v. *Houghton*, 27 Beav., 425; *Rochdale Canal Co.* v. *King*, 16 id., 630; *Anon.*, 2 Eq. Cas. Abr., 523; *Short* v. *Taylor*, 2 id.; *Dann* v. *Spurrier*, 7 Ves., 231; *Jones* v. *The Royal Canal Co.*, 2 Molloy, 319; *Radenhurst* v. *Coates*, 6 Grant's Ch., 140; *Heenan* v. *Dewar*, 18 id., 438, and 17 id., 638; *Basset* v. *Company*, 47 N. H., 426; *Tash* v. *Adams*, 10 Cush., 252; *Whitney* v. *R. R. Co.*, 11 Gray, 359; *Raritan Co.* v. *Veghte*, 19 N. J., 142; *Hulme* v. *Shreve*, 3 Green Ch., 116; Addison on Torts [Am. ed.], 259, and cases there cited; see, also, *Campbell* v. *Sea-*

*man*, 63 N. Y., 585, the opinion of Judge EARL; also, Eden on Injunction, 167.)

*Alexander Wentworth*, for the respondent.   The discharging of the whey from the vat, and the washings, and other refuse matter from the factory into the stream by defendants, constituted a nuisance.   (Wood on Nuisances, §§ 120, 439, 531, 682, 700, and the numerous cases cited in notes; *Davis* v. *Lamberton*, 56 Barb., 480; *Carhart* v. *Auburn Gas Light Co.*, 27 id., 297; Angell on Watercourses, §§ 136, 137, 388, 450; *People* v. *Townsend*, 3 Hill, 479; *Catlin* v. *Valentine*, 9 Paige, 575; *Hutchins* v. *Smith*, 63 Barb., 252; *Brady* v. *Weeks*, 3 id., 157; *Fish* v. *Doge.* 4 Denio, 311; *McKean* v. *See*, 51 N. Y., 300; *Chipman* v. *Palmer*, 9 Hun, 517; *Campbell* v. *Seaman*, 63 N. Y., 568, and cases there cited; *Harrison* v. *St. Mark's Church*, 15 Albany L. J., 248.)   There are no facts in the case constituting an equitable estoppel.   (*Babcock* v. *Utter*, 32 How., 439; *Bankhardt* v. *Houghton*, 27 Beav., 430; Wood's Law of Nuisance, § 798; *Brown* v. *Bowen*, 30 N. Y., 519; *Heiskell* v. *Gross*, 7 Phil. [Penn.], 317; *Gordon* v. *R. R. Co.*, 5 Beav., 233.)   Conceding that the facts gave Wiggins a license, it will not aid the defendants.   It was a mere personal right, not susceptible of conveyance founded in personal confidence, and revocable at pleasure.   It is not an easement or appurtenance, and did not pass to defendants with their deed, but became extinguished.   (*Babcock* v. *Utter*, 32 How., 439; *Jamison* v. *Milliman*, 3 Duer, 255; *Hazelton* v. *Putnam*, 3 Chand. Wis., 117; *Ex parte Coburn*, 1 Cow., 570; *Mumford* v. *Whitney*, 15 Wend., 381; *Eggleston* v. *N. Y. and Harlem R. R. Co.*, 35 Barb., 162; *Brown* v. *Bowen*, 30 N. Y., 519; *Miller* v. *Auburn and S. R. R.*, 6 Hill, 61; *Selden* v. *Delaware and Hudson Canal Co.*, 29 N. Y., 634; *Wood* v. *Leadbitter*, 13 M. & W., 838; *Roberts* v. *Rose*, 1 Exch. [L. R.], 82; *Bankhardt* v. *Houghton*, 27 Beav., 425; Brown on Statute of Frauds, §§ 27 to 29; Angell on Watercourses, § 285; 2 R. S.,134, § 6; 1 id., 738, § 137.)

SMITH, J. :

An examination of the testimony satisfies us that the findings of the referee, as to the extent to which the stream is polluted

and the plaintiff is damnified and annoyed, by the discharge into it of refuse matter from the defendants' factory, are not, as the appellants counsel insists, against the weight of evidence, but are warranted by the proof.

It is clear that such use of the stream, attended with such injurious results, is a nuisance. That the plaintiff is entitled to the interposition of the equitable power of the court, by injunction, to prevent a continuance of the nuisance, is equally clear, unless, as the appellant's counsel contends, the plaintiff has so acted, by encouraging the erection of the defendant's factory, by acquiescing in the use which those operating the factory have made of the stream, and by delay in complaining of the injurious effects of such use, as to preclude him from claiming equitable relief.

A person may so encourage that which he afterward complains of as a nuisance, as to preclude him from any claim in equity to an injunction. (*Williams* v. *Earl of Jersey*, 1 Cr. & Ph., 97; *Bassett* v. *Salisbury, etc. Co.*, 47 N. H., 426; *Wood* v. *Sutcliff*, 8 Eng. L. & Eq., 217; *Heenan* v. *Dewan*, 8 Grant's Ch., 438.) But neither an actual assent to the erection of the nuisance, nor active participation in its erection will have that effect, unless the party had reason to suppose that the erection would be a nuisance. The doctrine of estoppel, based upon encouragement or acquiescence, rests upon the ground that the party has so acted as that an attempt on his part to stop the nuisance or recover damages therefrom would be a positive fraud. If, therefore, the thing was something which might or might not become a nuisance, according to the circumstances of its use, he would not be estopped unless he knew the precise method of its use, and was fairly chargeable with notice of its results. (Wood on Nuisances, § 798; *Bankart* v. *Houghton*, 27 Beav., 425.)

It appears that the plaintiff uses his farm for stock and dairy purposes. He herds his cows and other stock, at night, in a pasture, where they have access to the stream, the water of which is the only water they can obtain while in the pasture. On the opposite side of the stream he has a dairy-house and well, about twelve rods from the stream, and the water of such well and stream is the only water which he has for the use of his dairy-

house, and the family occupying the same. The barn, in which the teams used on the farm are kept, is near the stream, and the water of the stream is principally used for watering the teams. The referee has found that in consequence of the accumulation on and above plaintiff's farm, of whey and refuse matters discharged from the factory, the water in the stream upon plaintiff's farm has been impregnated and corrupted therewith, and during seasons of warm weather and low water it has emitted noxious and offensive smells, and the water has been rendered unwholesome, impure, offensive, and often unfit for use, for the purposes of the farm, stock and dairy; the teams have sometimes refused to drink it; to some extent the air near to and along said stream has become corrupted, impure and offensive, and the milk from plaintiff's dairy has sometimes become tainted, by reason whereof, as the referee finds, the occupation and enjoyment of the plaintiff's farm and property have been rendered disagreeable, uncomfortable, inconvenient and less valuable, and the plaintiff has been annoyed and put to inconvenience, loss and damage. There is no finding and no evidence that when the plaintiff aided and encouraged the erection of the factory, he knew or had reason to suppose that the injurious results above stated would follow. The extent of the case on that point is, that he knew that it was the custom of cheese factories, in that section of country, to dischaage their surplus whey into the streams on which they were situated. It also appears that when the subject of discharging the surplus whey from the proposed factory into Elm creek was talked of in his hearing, he did not object to it. For aught that appears, he and all parties concerned may have expected at that time, that the water of the stream would carry away all the refuse matter proposed to be thrown into it, and no nuisance would be created on the plaintiff's premises. In these circumstances he is not estopped by anything that occurred before the factory was put in operation. It is highly unreasonable to suppose that he anticipated and consented that his farm should be injured and himself annoyed to the extent found by the referee.

As to the plaintiff's subsequent acquiescence and delay, the facts are these : The factory was erected and put in operation by John

Wiggins in the spring of 1874. During the seasons of 1874 and 1875, from April to November, the plaintiff patronized the factory and knew that the surplus whey was discharged into the stream, and he did not object to it. He also knew that the tendency of discharging sour and stale whey into the stream was to render its waters more or less impure. In December, 1875, the defendant bought the factory property of Wiggins and operated it through the season of 1876, using the stream substantially as Wiggins had done, and was preparing to do the same in the spring of 1877, at the time of the trial of this action. Had Wiggins continued to own the property, it is plain that the acquiescence and delay of the plaintiff after the erection of the factory would not have precluded him from relief by injunction. Mere delay, so long as the parties remain in *statu quo*, will not deprive a party of equitable relief, unless the lapse of time is so great as to create a right by prescription. (*Gale* v. *Abbott*, 8 Jur. [U. S.], 987; *Carlisle* v. *Cooper*, 18 N. J. Eq., 241; *Gordon* v. *Cheltenham R. R. Co.*, 5 Beav. 233.)

The circumstance that the defendants purchased the title, in the meantime, does not divest the plaintiff of his right to relief. The purchase was not induced by any action or representation on his part. The defendants knew, at the time of the purchase, that the use which their grantor had made of the stream was a nuisance to the plaintiff, and they took the risk of his asserting his equitable rights in respect to it.

That the plaintiff's farm will be materially lessened in value, by reason of the nuisance, if it is permitted to continue, is apparent from its nature and extent, as well as from the findings of the referee. The referee has not found that the business of the cheese factory must be abandoned if the defendants are prohibited from discharging the surplus whey and refuse matter into the stream, to the injury of the plaintiff. Such prohibition will only have the effect to diminish the profits of the business and the value of the property.

We think the plaintiff is entitled to an injunction restraining the defendants from discharging the surplus whey and refuse matter of the factory into the stream to his injury. But the judgment allows an injunction broader than that. It prohibits

the defendants from discharging into the stream any whey or other refuse matter produced at the factory, and also from doing or permitting anything at or about the factory that will tend to render the water of said stream, or the atmosphere along the same, impure or unwholesome. The referee has found that the factory cannot profitably be operated either in its present condition and structure, or by any available change therein, without some portions of the washings and drippings from the factory getting into the stream, and that what would so get into the stream would not corrupt its waters or render them impure. The fact established by the several findings on this point, as we understand them, is that in operating the factory some discharge into the stream is unavoidable, but that which is unavoidable will not injure the plaintiff, and any discharge injurious to the plaintiff can be avoided, but at increased expense to the defendants.

The judgment should be modified so as to restrain the defendants by injunction from discharging the surplus whey or refuse matter, or other noxious product of their factory into the stream known as Elm creek, so as to occasion damage or annoyance to the plaintiff, as owner or occupant of the farm and premises mentioned in the complaint, and as so modified, affirmed, neither party to have costs of the appeal as against the other.

TALCOTT, P. J., and HARDIN, J·, concurred.

Ordered accordingly.